RECEIVED
SEP 0 5 2017
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

B.R., A MINOR, BY SUSAN ROGERS, HIS
PARENT AND GUARDIAN AD LITEM,
and SUSAN ROGERS,

    Plaintiffs,

v.

BOROUGH OF POINT PLEASANT;
BOROUGH OF POINT PLEASANT
POLICE DEPARTMENT; MATTHEW F.
NICKERSON; ROBERT WELLS; JEFFREY
JOHNSON; LOREN MACIVER; LEON
DOWNS; DAVID RADSNIAK;
CHRISTOPHER PHILLIPS; AND
RICHARD LARSEN,

    Defendants.

Civ. No. 14-8029

OPINION

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter is before the Court upon multiple motions. Defendants Matthew Nickerson ("Nickerson"), Jeffrey Johnson ("Johnson"), Loren Maciver ("Maciver"), and Robert Wells ("Wells") (collectively, "the arresting officers") filed a motion for summary judgment. (ECF No. 52). Plaintiffs Susan Rogers and B.R., a minor,[1] (collectively "Plaintiffs") oppose the motion. (ECF No. 92). Defendants Borough of Point Pleasant ("Point Pleasant") and Borough of Point Pleasant Police Department ("Point Pleasant Police") also filed a separate summary

---

[1] At oral argument, Plaintiffs' counsel represented that B.R. turned eighteen years old since the filing of the Complaint. As a result, Plaintiffs' counsel indicated that he would be filing an amended complaint to reflect this change in status. To date, no amended complaint has been filed, however the Court will not consider this dispositive in ruling on the instant motions.

1

judgment motion on that same date, as did Defendants Downs, Larsen, Phillips, and Radsniak. (ECF Nos. 54, 55). Plaintiffs have not opposed these motions.[2] The Court has decided the motions based on the written submissions of the parties and a hearing held on June 7, 2017. For the reasons stated herein, all three of the Defendants' motions will be granted.

## BACKGROUND

This case arises out of a domestic dispute that occurred between Plaintiff Susan Rogers and non-party Kenneth Martyn on December 29, 2012 at 2308 River Road in Point Pleasant, New Jersey. The following facts are undisputed. B.R. is the son of Susan Rogers and Kenneth Martyn. On December 29, 2012, Susan Rogers and Kenneth Martyn got into an argument. (Joint Defense Statement of Material Facts ("JDSOMF"), ECF No. 52-4 ¶ 6; Pl.'s Response to Joint Defense Statement of Material Facts, ("Pl.'s Resp. SOMF"), ECF No. 77 ¶ 6). At approximately 11:20 A.M. on that same date, Kenneth Martyn called the Point Pleasant Police Department to report an act of domestic violence. (JDSOMF ¶ 7; Pl.'s Resp. JDSOMF ¶ 7). Defendants Nickerson, Maciver, Wells, and Johnson—officers of the Point Pleasant Police Department—responded to the call. (JDSOMF ¶ 8; Pl.'s Resp. JDSOMF ¶ 8). On December 29, 2012, Officer Wells was the most senior officer on the shift and therefore acted as the Officer in Charge. (JDSOMF ¶ 157; Pl.'s Resp. JDSOMF ¶ 157). On December 29, 2012, Officer Nickerson was a Class II special law enforcement officer who was being trained by Officer Maciver (JDSOMF ¶ 159; Pl.'s Resp. JDSOMF ¶ 159).

---

[2] Plaintiffs originally failed to timely oppose all of Defendants' motions. Despite this failure, on multiple occasions, the Court afforded Plaintiffs leave to file opposition to all of Defendants' motions. Plaintiffs did file a response to Defendants' Statement of Material Facts, and Plaintiffs' counsel appeared at the hearing held by the Court on June 7, 2017. (ECF No. 77). However, Plaintiffs subsequently filed an opposition brief, which was explicitly only directed at the motion of Defendants Nickerson, Maciver, Wells, and Johnson.

2

Officers Nickerson and Maciver were the first police officers to arrive at the scene. (JDSOMF ¶ 30; Pl.'s Resp. SOMF ¶ 30). Officer Nickerson was the first to enter the house, and he was let into the house by Susan Rogers. (JDSOMF ¶¶ 32, 42; Pl.'s Resp. JDSOMF ¶¶ 32, 42). Officer Nickerson spoke with Kenneth Martyn on the second floor of the house. (JDSOMF ¶ 44; Pl.'s Resp. JDSOMF ¶ 44). Officer Johnson later arrived and spoke with B.R. in B.R.'s second floor bedroom. (JDSOMF ¶ 224; Pl.'s Resp. JDSOMF ¶ 224).

When Officer Nickerson went to speak with Kenneth Martyn, he immediately saw that there was a large cut or scratch on Kenneth Martyn's face. (JDSOMF ¶ 57; Pl.'s Resp. JDSOMF ¶ 57). The signs of injury that Officer Nickerson observed on Kenneth Martyn's face were obvious and visible. (JDSOMF ¶ 74; Pl.'s Resp. JDSOMF ¶ 74). Officer Nickerson also observed a broken porcelain fish statue on the floor of the room where he was speaking with Kenneth Martyn. (JDSOMF ¶ 62, Pl.'s Resp. JDSOMF ¶ 62). Officers Maciver and Johnson took photographs of the broken porcelain fish statue and of Martyn's face. (JDSOMF ¶¶ 63–65; Pl.'s Resp. JDSOMF ¶¶ 63–65). Kenneth Martyn explained to Officer Wells that Susan Rogers threw the porcelain fish statue that struck him in the face and showed Officer Wells where he was standing when it happened. (JDSOMF ¶ 192; Pl.'s Resp. JDSOMF ¶ 192). Officer Maciver also observed a visible injury on Kenneth Martyn's face and when Officer Maciver first saw Kenneth Martyn, he appeared visibly upset. (JDSOMF ¶¶ 116, 118; Pl.'s Resp. JDSOMF ¶¶ 116, 118). When the officers were speaking with Kenneth Martyn, he told them that he had grabbed Susan Rogers' cell phone from her hand. (JDSOMF ¶ 128, Pl.'s Resp. JDSOMF ¶ 128). When speaking with Officer Nickerson, Susan Rogers described feeling either pain or discomfort in her wrist. (JDSOMF ¶ 51; Pl.'s Resp. JDSOMF ¶ 51). Susan Rogers admits that she could not hear what Kenneth Martyn was saying to the police officers and that she has no idea what he said to them. (JDSOMF ¶ 61; Pl.'s Resp. JDSOMF ¶ 61).

3

After speaking with both Susan Rogers and Kenneth Martyn, Officer Nickerson made a determination as to who was the aggressor and who was the victim. (JDSOMF ¶ 54; Pl.'s Resp. JDSOMF ¶ 54). In short, after separating the parties, the police officers conducted their investigation, interviewed both parties, observed damage to the bedroom door, observed visible signs of injury on Kenneth Martyn's face, and reached the conclusion that Susan Rogers was the aggressor and that Susan Rogers would be arrested. (JDSOMF ¶ 193; Pl.'s Resp. JDSOMF ¶ 193).

Subsequently at the police station, Defendant Radsniak arrived for his shift and was informed that Susan Rogers was in the holding cell. (JDSOMF ¶ 239; Pl.'s Resp. JDSOMF ¶ 239). Defendant Radsniak along with a Detective Scalabrini explained to Susan Rogers that a judge made a determination to grant custody of B.R. to Kenneth Martyn. (JDSOMF ¶ 248; Pl.'s Resp. JDSOMF ¶ 248). Defendant Radsniak never received any evidence that Kenneth Martyn had abused B.R. in the past; never received any specific information as to why Kenneth Martyn was dangerous; and never received any history of abuse by Kenneth Martyn of B.R. (JDSOMF ¶ 272; Pl.'s Resp. JDSOMF ¶ 272). Defendant Radsniak advised B.R. that, based upon the judge's decision, B.R. had to go with his father. (JDSOMF ¶ 278; Pl.'s Resp. JDSOMF ¶ 278).

The next day, Officers Maciver and Wells responded to the same address to investigate a reported act of criminal mischief. (JDSOMF ¶ 139; Pl.'s Resp. JDSOMF ¶ 139). After responding to the December 30, 2012 call, Officers Maciver and Wells called Susan Rogers to advise her that some items in her home had been damaged. (JDSOMF ¶ 142; P.'s Resp. JDSOMF ¶ 142). As to this second call, Officer Maciver advised Susan Rogers that the police had made the determination that she was the victim of domestic violence. (JDSOMF ¶ 143; Pl.'s Resp. JDSOMF ¶ 143). Susan Rogers indicated that she wanted to seek a temporary restraining order against Kenneth Martyn, and a temporary restraining order was eventually issued.

4

(JDSOMF ¶¶ 145, 150; Pl.'s Resp. JDSOMF ¶¶ 145, 150). On July 30, 2013, Kenneth Martyn was indicted by the Ocean County Prosecutor's Office on one court of criminal mischief as a result of damages he caused to the home of Plaintiff Susan Rogers on December 30, 2012, the day after the arrest of Susan Rogers. (JDSOMF ¶ 369; Pl.'s Resp. JDSOMF ¶ 369).

Plaintiffs filed a motion for partial summary judgment on April 21, 2017. (ECF No. 57). On April 21, 2017, Defendants Nickerson, Maciver, Wells, and Johnson filed a motion for summary judgment. (ECF No. 52). Defendants Borough of Point Pleasant and Borough of Point Pleasant Police Department also filed a separate summary judgment motion on that same date, as did Defendants Downs, Larsen Phillips, and Radsniak. (ECF Nos. 54, 55). The Court held oral argument on all four motions on June 7, 2017. At oral argument, the Court denied Plaintiffs' motion for summary judgment. (ECF Nos. 89, 90). Additionally, at oral argument, Plaintiffs voluntarily dismissed all claims against Defendants Downs, Phillips, Larsen, and the Borough of Point Pleasant Police Department. (*Id.*). Plaintiff also voluntarily dismissed their claims based on an alleged conspiracy. (*Id.*).[3] Therefore, the three summary judgment motions filed by remaining Defendants (ECF Nos. 52, 54, 55) are presently before the Court.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P.

---

[3] As a result, the Court dismissed these claims. (ECF No. 89).

5

56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).

## ANALYSIS

The Complaint in this case is a thirty-eight page, single spaced document that includes eight counts. (*See* Compl., ECF No. 1). However, the eight Counts do not include separate headings identifying the nature of each Count, and many of the Counts contain largely repetitive language. (*Id.*). As previously discussed, Plaintiffs voluntarily dismissed their claims based on an alleged conspiracy (which the Court interprets as Count III), as well as all claims against Defendants Downs, Phillips, Larsen, and the Borough of Point Pleasant Police Department. Therefore, the Court interprets the Complaint to include remaining claims for: (Count One) 42 U.S.C. § 1983 claim for false arrest/false imprisonment; (Count Two) malicious prosecution; (Count Four) 42 U.S.C. § 1983 claim for state-created danger with respect to B.R. on December 29–30, 2012; (Count Five) 42 U.S.C. § 1983 claim for municipal liability against Defendant Point Pleasant Borough for failure to train/supervise that deprived Plaintiff of a Constitutional right; (Count Six) vicarious liability claim against Defendant Point Pleasant Borough with respect to malicious prosecution claim; (Count Seven) municipal liability claim against Defendant Point Pleasant Borough for a custom, policy, or practice that deprived Plaintiff of a Constitutional right; (Count Eight) vicarious liability claim with respect to state-created danger claim.

6

## I. Defendants Nickerson, Maciver, Wells, and Johnson Summary Judgment Motion

It appears that Plaintiffs' Section 1983 claims for false arrest/false incarceration, malicious prosecution, and state-created danger are directed at Defendants Nickerson, Maciver, Wells, and Johnson. (*See* Compl., ECF No. 1). Defendants argue that they are entitled to summary judgment on all claims against them.

### a. Probable Cause

Defendants argue that they are entitled to summary judgment because probable cause existed to arrest Susan Rogers on December 29, 2012. An arrest without probable cause is a Fourth Amendment violation actionable under § 1983. *See Walmsley v. Philadelphia*, 872 F.2d 546 (3d Cir. 1989). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988); *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). A claim for false imprisonment arises when a person is arrested without probable cause and is subsequently detained pursuant to that unlawful arrest. *See Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011) (per curiam) (citation omitted). Thus, a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause. *See Johnson v. Camden Cnty. Prosecutors' Office*, 2012 WL 273887, at *4 n.2 (D.N.J. Jan. 31, 2012) (citation omitted).

"The proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offence but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Campbell v. Moore*, 92 F. App'x 29, 32 (3d Cir. 2004) (citing *Dowling*, 855 F.2d at 141). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in

7

themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Thus, the arresting officer must only reasonably believe at the time of the arrest that an offense has been or is being committed, a significantly lower burden than proving guilt at trial. *See Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

The Third Circuit has "held that a victim's identification, even without any other evidence, will 'usually be sufficient to establish probable cause.'" *Cooper v. City of Philadelphia*, 2016 WL 210459, at *1 (3d Cir. Jan. 19, 2016) (citing *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000)). This rule, while not absolute, is subject only to limited exceptions for cases where the officer is aware of "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability." *Id*. "Generally, the question of probable cause in a Section 1983 damage suit is one for the jury." *Campbell*, 92 F. App'x at 32 (citation omitted). However, in the context of a motion for summary judgment, "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788–89 (3d Cir. 2000) (internal quotation marks omitted).

In this case, after the officers arrived on the scene, Kenneth Martyn explained to Officer Wells that Susan Rogers threw the porcelain fish statue that struck him in the face and showed Officer Wells where he was standing when it happened. (JDSOMF ¶ 192; Pl.'s Resp. JDSOMF ¶ 192). It is undisputed that the officers observed obvious and visible injury to Kenneth Martyn's face. (JDSOMF ¶¶ 57, 74, 116, 118; Pl.'s Resp. JDSOMF ¶¶ 57, 74, 116, 118). It is undisputed that, after separating the parties, the police officers conducted their investigation, interviewed both parties, observed damage to the bedroom door, observed visible signs of injury

8

on Kenneth Martyn's face, and reached the conclusion that Susan Rogers was the aggressor and that Susan Rogers would be arrested. (JDSOMF ¶ 193; Pl.'s Resp. JDSOMF ¶ 193). In short, it is undisputed that Kenneth Martyn identified Plaintiff as having committed an act of domestic violence against him, the officers observed an obvious and visible injury to Kenneth Martyn's face, the officers concluded that Martyn was the victim and that Plaintiff was the aggressor, and arrested Plaintiff Susan Rogers. Plaintiffs do allege that Susan Rogers' wrist was red and swollen when she spoke with the officers (JDSOMF ¶ 6; Pl.'s Resp. JDSOMF ¶ 76). Officer Nickerson, in a Narrative Report written after the incident, asserted that officers looked at her wrist, but observed no visible injury to Susan Rogers. (Pl.'s Ex. 10, ECF No. 57-4 at 107–116; Def.'s Ex. I(3), ECF No. 52; JDSOMF ¶ 75). Even viewing assertions such as these in the light most favorable to Plaintiffs, the Court is persuaded that the arresting officers had probable cause to arrest Susan Rogers.

Plaintiffs' opposition brief mainly argues that Defendants lacked probable cause. Specifically, Plaintiffs argue that the arresting officers were aware of previous incidents involving arrests, mental health issues, and domestic violence with respect to Kenneth Martyn. However, Plaintiff fails to support the vast majority of these assertions with citations to evidence in the record in this case.[4] To the extent that Plaintiff does cite evidence in the record, the Court is not persuaded that the evidence reflects any level of independent exculpatory evidence or substantial evidence of the witness's own unreliability within the knowledge of the arresting officer at the time of the arrest that would change the outcome of the Court's probable cause

---

[4] Plaintiffs' opposition brief contains a recitation of the facts that is fifteen pages long, with only four apparent citations to evidence in the record in this case. Plaintiff's opposition brief also lists 27 "facts" which they argue stand for the proposition that Defendants did not have probable cause to arrest Susan Rogers on December 29, 2012, with no citation to evidence in the record. (*See* ECF No. 92).

9

analysis. For example, Plaintiffs cite Plaintiffs' Exhibits 7 and 8 (ECF No. 57-4 at 75–103) to stand for the proposition that Kenneth Martyn had multiple restraining orders entered against him at the time of the incident, and that Kenneth Martyn was previously involved in multiple incidents involving Point Pleasant Borough Police. However, Defendant Maciver is the only one of the four officers who responded to the December 29, 2012 incident that is mentioned in any of these documents, and he apparently responded to a previous incident involving Susan Rogers and Kenneth Martyn in 2009. (*See* Ex. 7, ECF No. 57-4). Plaintiffs have not brought to this Court's attention evidence sufficient to demonstrate that the arresting officers had independent exculpatory evidence or substantial evidence of the witness's own unreliability at the time of the arrest. Therefore, when construing the facts in the light most favorable to Plaintiffs, the Court is persuaded that there is no dispute of a material fact that the arresting officers had probable cause to arrest Susan Rogers.[5] As a result, the Court grants Defendants Nickerson, Maciver, Wells, and Johnson's summary judgment motion on Plaintiffs' claims for false arrest/false imprisonment.

---

[5] Additionally, as Defendants Nickerson, Maciver, Wells, and Johnson point out in their brief, and as the Court found in *Signorile v. City of Perth Amboy*, 523 F. Supp. 2d 428, 433–34 (D.N.J. 2007), because the victim here exhibited physical signs of injury allegedly caused by an act of domestic violence, the arrest here may have been required under the New Jersey Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25–17 et seq, which in relevant part, provides:

> [w]hen a person claims to be a victim of domestic violence, and where a law enforcement officer responding to the incident finds probable cause to believe that domestic violence has occurred, the law enforcement officer *shall* arrest the person who is alleged to be the person who subjected the victim to domestic violence and *shall* sign a criminal complaint if [t]he victim exhibits signs of injury caused by an act of domestic violence[.]

N.J.S.A. 2C:25–21a(1) (emphasis added).

10

### b. Malicious Prosecution

Plaintiffs assert that they are bringing both federal and state law claims for malicious prosecution. To state a malicious prosecution claim under Section 1983 and the New Jersey Civil Rights Act, Plaintiff must establish that: (1) Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Defendants acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding. *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014). The elements of the common law tort of malicious prosecution under New Jersey law are the same, except no deprivation of liberty need be shown. *Harris v. Zyskowski*, 2013 WL 6669186, at *6 (D.N.J. Dec. 18, 2013). Therefore, to state a claim for malicious prosecution under both federal and state law, a Plaintiff is required to demonstrate a lack of probable cause. Given the Court's findings regarding probable cause just discussed, Plaintiffs cannot prevail on their claims for malicious prosecution. Therefore, the Court enters summary judgment in favor of Defendants Nickerson, Maciver, Wells, and Johnson on this claim as well.

### c. State-Created Danger

It appears that Plaintiffs additionally bring a claim for state-created danger. In *Kneipp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996), the Third Circuit first adopted the state-created danger theory as a mechanism by which plaintiffs may establish constitutional violations under 42 U.S.C. § 1983. *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) (citing *Kneipp*, 95 F.3d at 1201). To prevail on a state-created danger claim in the Third Circuit, a plaintiff must prove the following four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;

11

> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford*, 456 F.3d at 304–05 (citations omitted).

In this case, Plaintiffs' opposition brief did not address the state-created danger claim. That being said, it appears that Plaintiffs allege that Defendants knew that releasing B.R. into the custody of Kenneth Martyn subjected B.R. to a high risk of violence and B.R. has suffered psychological and emotional damages as a result.

The Court is not persuaded that the first factor can be satisfied because Plaintiffs have not set forth evidence reflecting any direct, foreseeable harm that was caused by releasing B.R. into the custody of Kenneth Martyn. Further, with respect to the second factor, "[w]hat is required to meet the conscience-shocking level will depend on the circumstances of each case, particularly the extent to which deliberation is possible. In some circumstances, deliberate indifference will be sufficient. In others, it will not." *Sanford*, 456 F.3d at 310. "[I]n a state-created danger case, when a state actor is not confronted with a 'hyperpressurized environment' but nonetheless does not have the luxury of proceeding in a deliberate fashion, the relevant question is whether the officer consciously disregarded a great risk of harm." *Id.*

In this case it is undisputed that on December 29, 2012, Defendant Radsniak had in his possession a Court order indicating that B.R. was to be placed in the custody of his father, Kenneth Martyn. (JDSOMF ¶ 277; Pl's Resp. JDSOMF ¶ 277). It is also undisputed that Defendant Radsniak along with a Detective Scalabrini explained to Susan Rogers that a judge made a determination to grant custody of B.R. to Kenneth Martyn. (JDSOMF ¶ 248; Pl.'s Resp. JDSOMF ¶ 248). Defendant Radsniak never received any evidence that Kenneth Martyn had

12

abused B.R. in the past; never received any specific information as to why Kenneth Martyn was dangerous; and never received any history of abuse by Kenneth Martyn of B.R. (JDSOMF ¶ 272; Pl.'s Resp. JDSOMF at 272). Defendant Radsniak advised B.R. that, based upon the judge's decision, B.R. had to go with his father. (JDSOMF ¶ 278; Pl.'s Resp. JDSOMF ¶ 278). Plaintiffs have not introduced evidence that Defendant Radsniak or any of the other Defendants consciously disregarded a great risk of harm, or even acted with deliberate indifference, by following a valid Court order from a judge and releasing B.R. into the custody of his father.

### d. Conclusion

For the reasons discussed above, the Court grants Defendant Nickerson, Maciver, Wells, and Johnson's summary judgment motion on all remaining claims against them.

### II. Defendants Downs, Larsen, Phillips, and Radsniak Summary Judgment Motion

Plaintiffs previously voluntarily dismissed their claims against Defendants Downs, Larsen, and Phillips. Therefore, Defendant Radsniak is the only remaining Defendant relevant to this motion. Defendant Radsniak argues that he is entitled to summary judgment on all remaining claims against him. Plaintiffs have failed to oppose this motion. Nonetheless, the Court finds that Defendant Radsniak has meritorious arguments such that his summary judgment motion should be granted. The Court's discussion regarding probable cause entitles Defendant Radsniak to summary judgment on any false arrest/false imprisonment claim and any malicious prosecution claim against him.[6] Additionally, as discussed above, the Court is persuaded that Plaintiffs' state-created danger claims fail against all Defendants, including Defendant Radsniak. Therefore, Defendant Radsniak's motion for summary judgment will be granted on all remaining claims against him.

---

[6] Additionally, it appears that Defendant Radsniak was not at the scene of the arrest.

13

## III. Defendants Borough of Point Pleasant and Point Pleasant Borough Police Department Summary Judgment Motion

It appears that four municipal liability counts remain against Defendant Point Pleasant Borough—(Count Five) 42 U.S.C. § 1983 claim for municipal liability against Defendant Point Pleasant Borough for failure to train/supervise that deprived Plaintiff of a Constitutional right; (Count Six) vicarious liability claim against Defendant Point Pleasant Borough with respect to the malicious prosecution claim; (Count Seven) 42 U.S.C. § 1983 claim for municipal liability against Defendant Point Pleasant Borough for custom, policy ,or practice that deprived Plaintiff of a Constitutional right; (Count Eight) vicarious liability with respect to the state-created danger claim.

Point Pleasant Borough argues that it is entitled to summary judgment on these claims and Plaintiffs have not opposed the motion. Initially, the Court notes that Plaintiffs cannot prevail on Counts 6 and 8—the claims relating to vicarious liability—because "a municipality cannot be held liable under § 1983 for the constitutional torts of its employees by virtue of respondeat superior." *McGreevy v. Stump*, 413 F.3d 359, 367 (3d Cir. 2005); *see also Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 663–64 n.7 (1978). Additionally, as previously discussed, the Court previously found that Plaintiffs cannot prevail on the underlying claims for malicious prosecution and state created danger.

Next, Counts 5 and 7 appear to be brought pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). To prevail on a *Monell* claim, a plaintiff must first establish that the municipality had a policy or custom that deprived him of his constitutional rights. *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread

14

custom, that caused the violation. *Watson v. Abington Twp.*, 478 F.3d 144, 155–56 (3d Cir. 2007). A plaintiff may show the existence of a policy when a decision-maker with final authority issues an official proclamation, policy, or edict. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Custom may be established by showing that a given course of conduct, "although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* Once a § 1983 plaintiff identifies a municipal policy or custom, he must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Additionally, in order to succeed on a claim for failure to train or supervise, Plaintiffs must show that the Borough acted with deliberate indifference to the known or obvious consequences of its acts or its failure to act. *Canton v. Harris*, 489 U.S. 378, 388 (1989). "A showing of simple or even heightened negligence will not suffice." *Brown*, 520 U.S. at 407. Deliberate indifference may be demonstrated by showing a pattern of violations which puts the municipal employee on notice that a new program is necessary; or a single violation where the need for training was patently obvious. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014).

Further, a plaintiff cannot maintain a *Monell* claim for damages against a municipality under § 1983 when no constitutional injury has occurred. *Accumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 217 n.12 (3d Cir. 2009); *see Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 283 (3d Cir. 2006) ("[A] municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury."); *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989) ("[A municipal defendant] cannot be vicariously liable under *Monell* unless one of [its] employees is primarily liable under section 1983 itself."); *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 381 (D.N.J. 2015).

15

In this case, Plaintiffs have failed to provide the Court with any opposition brief on the *Monell* claims. However, it appears that the basis for both Counts 5 and 7 is an alleged failure to train, as Plaintiffs have not presented evidence that any of the defendants were acting pursuant to an official proclamation, policy, or edict or that Defendants acted pursuant to a well-settled, permanent, or widespread custom that violated Plaintiffs' constitutional rights. Plaintiffs also have not presented any evidence that any of these Defendants was a policymaker for the Borough.[7] Further, with respect to Plaintiffs' failure to train/supervise claim, the Court is not persuaded that Plaintiffs have presented evidence that the Borough acted with deliberate indifference to the known or obvious consequences of its acts or its failure to act. Even if Plaintiffs had presented evidence of deliberate indifference, as previously discussed, Plaintiffs have not demonstrated a constitutional injury. Therefore, to the extent that Plaintiffs bring claims against the Borough of Point Pleasant for the failure to train/supervise which resulted in the deprivation of a Constitutional right and for the existence of a custom, policy, or practice that resulted in the deprivation of a Constitutional right, the Court enters summary judgment in favor of the Borough of Point Pleasant on these claims.

## CONCLUSION

For the reasons discussed above, all three of the Defendants' motions for summary judgment will be granted. An appropriate order will follow.

Dated: September 5, 2017

ANNE E. THOMPSON, U.S.D.J.

---

[7] It is undisputed that Lawrence Williams—Chief of Police of Point Pleasant Borough at the time of the incident—is not a defendant here. (JDSOMF ¶¶ 348–49; Pl.'s Resp. JDSOMF ¶¶ 348–49).

16